AO 106 (Rev. 04/10)  Application for a Search Warrant

**FILED**
U.S. District Court
~~District of Kansas~~

# UNITED STATES DISTRICT COURT

for the

District of Kansas

OCT 17 2022

Clerk, U.S. District Court
By_____ Deputy Clerk

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
INFORMATION ASSOCIATED WITH SNAPCHAT )
ACCOUNT jimboliveson72 THAT IS STORED AT PREMISES )
CONTROLLED BY SNAP INC. )

Case No.  22-MJ-6293-01-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT jimboliveson72 THAT IS STORED AT PREMISES CONTROLLED BY SNAP INC.

located in the _____Central_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252/2252A | Offense relating to the Sexual Exploitation of Children |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Travis Putrah, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed telephonically.

Date: 17 Oct 22 @ 9:19am

_____
*Judge's signature*

City and state: _____Wichita, Kansas_____

Honorable Gwynne E. Birzer, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT Of AN APPLICATION FOR A SEARCH WARRANT

Your affiant, Travis Putrah, being duly sworn, hereby deposes and states the following:

## INTRODUCTION AND AGENT BACKGROUND

1.      Your affiant is a Special Agent with Homeland Security Investigations ("HSI")

and has been so employed since September 2019.

      a.  As a requirement for employment as an HSI Special Agent, your affiant
successfully completed a twelve-week Criminal Investigator Training Program
("CITP") located at the Federal Law Enforcement Training Center ("FLETC") in
Glynco, Georgia. At the conclusion of CITP, your affiant also completed an
additional twelve-week HSI Special Agent Training ("HSISAT") Academy. As
part of the training at FLETC, your affiant received extensive instruction in the
areas of Customs law, Immigration law and Criminal law.

      b.  Prior to your affiant's tenure as a SA with HSI, your affiant was employed as a
Border Patrol Agent with the Department of Homeland Security ("DHS") from
2005 to 2019. From 2015 to 2018, your affiant was assigned to the Federal
Bureau of Investigations' ("FBI") Indian Country Task Force in Bemidji,
Minnesota. Your affiants' duties included investigating crimes of violence, to
include death and assaults with deadly weapons; sexual assaults of juveniles,
human trafficking, illegal trafficking of firearms and explosives; the manufacture,
sale, and distribution of controlled substances; trafficking of child pornography;
money laundering; arson; and the disruption/dismantling of violent gangs.

      c.  From 2018 to September 2019, your affiant was assigned to the HSI Task Force
in Wichita, Kansas. While serving as an HSI TFO, your affiant was responsible
for investigating federal violations of the trafficking of controlled substances; the
production and sale of fraudulent documents; violations of immigration law; the
trafficking of child pornography; and the theft of intellectual property.

## PURPOSE OF THE AFFIDAVIT

2.  This affidavit is made in support of an application for a search warrant under Title 18

U.S.C. § 2703(a), 2703(b)(I)(A) and 2703(c)(1)(A) to require Snap Inc. (Snapchat) to

disclose to the government records and other information in its possession, further

described in Attachment B, pertaining to the accounts, further described in Attachment A.

3. As will be shown below, there is probable cause to believe that the identified Snapchat account(s) have been involved in the production, transportation, distribution, receipt, and possession of child pornography, in violations of Title 18 U.S.C. §§ 2251, 2252, and 2252A. Your affiant submits this application and affidavit in support of a search warrant authorizing the search of the account(s) described in Attachment A. Your affiant seeks authorization to examine the account(s) to seize evidence fruits, and instrumentalities, relating to the aforementioned criminal violations, and as further described in Attachment B.

4. The statements in this Affidavit are based in part on information provided by Kik, the National Center for Missing and Exploited Children ("NCMEC"), other law enforcement officers and on my investigation of this matter. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included each and every fact known to me concerning this investigation. Your affiant has set forth only the facts that they believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(l) (transportation of child pornography); and 18 U.S.C. § 2252A(a)(2)(A) (receipt or distribution of child pornography); and 18 U.S.C. § 2252A(a)(5)(B) (possession of and access with intent to view child pornography); and 18 U.S.C. § 2252A (production of child pornography); are presently located on a device obtained from LYNN, more specifically described in Attachment A.

**JURISDICTION**

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 U.S.C. § 2711. 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a District court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**DEFINITIONS**

6. The following definitions apply to this Affidavit and Attachment B:

    a. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

    b. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

    c. "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

    d. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(l).

    e. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units; internal and peripheral storage devices such as fixed disks; external hard drives; "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on

3

the computer; and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

f. "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

g. "Hyperlink," as used herein, refers to an item on a web page or in a mobile application which, when selected, transfers the user directly to another location in a hypertext document or to some other web page or (part of) a mobile application.

h. "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

i. An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

j. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

k. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

l. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

m. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; ( c) masturbation; ( d) sadistic or masochistic abuse; or ( e) lascivious exhibition of the anus, genitals, or pubic area of any person.

n. A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks; RAM; "thumb," "jump," or "flash" drives; CD/DVDs; and other magnetic or optical media.

o. "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address. URLs are made of letters, numbers, and other symbols in a standard form. People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a::web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

p. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## TECHNICAL INFROMATION REGARDING SNAP, INC.

7. Snapchat is a mobile application designed, owned and operated by Snap, Inc. and available through the iPhone App Store and Google Play.  The application provides users the ability to share photographs, videos, and text messages.  Shareable content includes "Snaps," "Stories," "Memories," and "Chats."

8. Basic subscriber information is collected when a user creates a new Snapchat account, alters information at a later date, or otherwise interacts with the Snapchat app. Basic subscriber information may include a Snapchat username, email address, phone number, display name, Snapchat account creation date and IP address, and timestamp and IP address of account logins and logouts. The logs containing IP addresses associated with

5

the account login and logout are retained for a limited period of time after the user has deleted their Snapchat account.

9. "Snaps" allow a user to take photos or video using their mobile device's camera in real-time and then send those photos or videos to any of their "friends" or in a Story or Chat. Unless the sender or recipient opts to save the photo or video, the message will be deleted from the sender's device once the message is sent or the recipient's device after the message is opened. Snap, Inc.' s servers are designed to automatically delete an unopened Snap sent directly to a recipient after 30 days and an unopened Snap in Group Chat after 24 hours.

10. "Stories" are a collection of "Snaps" displayed in chronological order. These can be viewed by all Snapchat users, a user's "friends", or a custom audience depending on a user's privacy settings. Snap, Inc.'s servers are designed to automatically delete a user's "Story" 24 hours after the user posts the "Story" but the user may delete part or all of the "Story" earlier. Submissions to "Our Story" may be saved for longer periods of time.

11. "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent "Snaps," posted "Stories," and photos and videos from their phone's photo gallery in "Memories."  Content saved in "Memories" is backed up by Snap, Inc. and may remain in "Memories" until deleted by the user. Users may encrypt their content in "Memories" (called "My Eyes Only"), in which case the content is not accessible to Snap, Inc. and cannot by decrypted by them.

12. "Chats" is a feature within Snapchat that allows users to type messages, send "Snaps," audio notes, and video notes to their "friends." Snap, Inc.'s servers are designed to automatically delete one-to-one "Chats" once the recipient has opened the message and

both the sender and recipient have left the chat screen, depending on the user's settings. Snap, Inc.'s servers are designed to automatically delete unopened one-to-one "Chats" in 30 days. Users are also able to chat in groups. "Chats" sent in groups are deleted after 24 hours whether they are opened or not.  A user can save a message in "Chat" by pressing and holding the message. The user can "unsave" the message by pressing and holding it again. This will delete it from Snap, Inc.'s servers. Users can also delete "Chats" that they have sent to a recipient before the recipient has opened the chat or after the recipient has saved the chat.

13. Snap, Inc. will collect location data at various points during a user's use of Snapchat if the user has device-level location services turned on and has opted into location services on Snapchat. The retention of this location data will vary depending on the purpose of the collection.  Users have some control over the deletion of their location data in the app settings.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

14. On or about July 9, 2022, MediaLab/Kik Messenger ("Kik") submitted CyberTip Report ("CTR") 128580616 to the National Center for Missing and Exploited Children ("NCMEC").  Kik reported it had detected a user uploading multiple files of apparent child pornography using their service.

15. Kik identified the user as:

    a.  Username**: jimbolives72**; ESP User ID:  jimbolives72_hfl;

    b.  Email address:  jimmyl@hatchettauto.com;

    c.  First name:  Jimmy and Last name: "L".

16. Approximately 42 files were uploaded to Kik from the above account.  The following are descriptions of several of those files:

17. File #1 "2a225fed-4104-9465-891e2d8329a1" is a video file approximately 1 minute 50 seconds in length.  The video shows an adult male having anal intercourse with a

7

prepubescent white female child on a bed.  The file was uploaded/shared via private chat message by jimbolives72_hfl on July 7, 2022 at 20:45:16 UTC from IP address **174.71.138.186** (Cox Business)

18. File #2 "14a230ab-7879-452d-8b35-d9ef5dc5dae6" is a video file approximately 1 minute 32 seconds in length.  The video shows and adult female performing oral sex on a prepubescent white female child.  The child is laying on a bed.  The file was uploaded/shared via private chat message by jimbolives72_hfl on June 30, 2022 at 00:58:21 UTC from IP address **76.222.228.30** (AT&T U-verse)

19. File #3 "953c8648-553c-4a3f-9b48-1407eb487201" is a video file approximately 41 seconds in length.  The video shows a prepubescent white female child performing oral sex on an adult male.  The female child is blindfolded.  The file was uploaded/shared via private chat message by jimbolives72_hfl on June 29, 2022 at 23:36:32 UTC from IP address 172.58.111.107 (T-Mobile USA).

20. Kik also identified the device used by jimbolives72_hfl to access the Kik account.  The reported device was a Samsung Galaxy S22, model SM-S906U.

21. Utilizing open-source databases, investigators were able to locate an individual, employed by Hatchett Automotive, by the name of Jimmy LYNN Jr. ("LYNN"), date of birth 09/XX/1972.

22. On August 31, 2022, investigators obtained and executed a search warrant for Kik account by jimbolives72_hfl.  While reviewing the digital evidence provided by Kik in response to the search warrant, investigators located photographs of LYNN as well as videos and photographs of child pornography.

23. On August 31, 2022, investigators obtained and executed a search warrant on AT&T for IP address **76.222.228.30** used on July 3, 2022 at 02:00:09 UTC.  AT&T identified LYNN as the subscriber with the above IP usage from May 24, 2022 to July 27, 2022.  AT&T also listed 1029 N Azure Cir as the subscriber address; phone number 316-303-2782; email address jimmyandaimee@hotmail.com.

24. On August 31, 2022, investigators obtained and executed a search warrant on Cox Communications for IP address **174.71.138.186** used on July 1, 2022 at 21:44:30 UTC.  Cox Communications identified the subscriber as Hatchett Automotive, Hyundai of Wichita, Kansas.  Investigators noted that this was the employer of LYNN.

25. On September 29, 2022, investigators executed a search warrant to seize LYNN's Samsung Galaxy S22 (model SM-S906U) smartphone. In a post-Miranda interview, LYNN admitted to obtaining and sharing images child pornography utilizing Kik and the mobile application Telegram. LYNN further stated his smartphone would contain child pornography. LYNN provided written consent to investigators to search the above listed smartphone.

26. On October 3, 2022, during examination of LYNN's smartphone, Det. Mackey observed the assigned telephone number for the Samsung Galaxy S22 smartphone as **316-303-2782**.

27. On or about October 4, 2022, while reviewing CTR 128580616, SA Putrah reviewed related CTR 115270641. On or about January 12, 2022, Snapchat submitted CTR 115270641 to the NCMEC. Snapchat reported it had detected a user uploading/sharing files of apparent child pornography using their service.

28. Snapchat identified the user as:

    a. User reported phone number:  **316-303-2782**

    b. User date of birth:  **09/XX/1972**

    c. Username:  **jimboliveson72**

29. SA Putrah noted that the reported user phone number was the same number assigned to LYNN's Samsung Galaxy S22 smartphone. The reported date of birth is identical to LYNN's date of birth. The reported username is also very similar to the username utilized by LYNN for his Kik account.

30. The following are descriptions of the files captured and reported by Snapchat:

    a. File #1: "jimboliveson72-None-b5cf9f6a-6370-5edd-a493-d3c8c62a3fae~51-62f321456b.mp4" is a video file approximately 45 seconds in length. The video shows a prepubescent female child wearing a pink shirt and is naked from the waist down. The focus of the video is on the child's genitals. The child digitally penetrates themselves. The file was uploaded/shared by user jimboliveson72 on January 11, 2022 at 20:29:14 UTC.

    b. File #2: "jimboliveson72-None-b5cf9f6a-6370-5edd-a493-d3c8c62a3fae~43-80eedd5530.mp4" is a video file approximately 29 seconds in length. The video shows a nude prepubescent female child. The child is performing oral sex on an

adult white male.  The file was uploaded/shared by user jimboliveson72 on January 11, 2022 at 20:27:29 UTC.

## CHARACTERISTICS OF PEOPLE WHO EXPLOIT CHILDREN

31. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals who access online child sexual abuse and exploitation material via a website or via file-sharing:

   a.  Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

   b.  Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

   c.  Such individuals almost always possess and maintain child pornographic material in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years.

   d.  Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly. Some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis.

   e.  Importantly, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Indeed, the very nature of electronic storage means that evidence of the crime is often still discoverable for extended periods of time even after the individual "deleted" it.

    f.   Such individuals also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/possessors, conceal such correspondence as they do their sexually explicit material, and often maintain contact information (e.g. online messaging accounts, email addresses, etc.) of individuals with whom they have been in contact and who share the same interests in child pornography.

    g.   Such individuals prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

32. Based upon LYNN's verified association with the email account used to establish the Kik account involved in the trading of child pornography, and LYNN's usage of an internet service provider observed in the transmission of child pornography via that Kik account, there is probable cause to believe LYNN is operating the Snapchat account to trade in child pornography.

33. The Snapchat account listed above and in Attachment A are likely to contain evidence of the above-described criminal activity, including stored child pornography; messaging involving child pornography; and evidence associated with user attribution for the accounts (such as IP information, registration information, and message content that may explain who operated the account at a given time).

## DESCRIPTION OF ITEMS TO BE SEARCHED

1.    Your affiant anticipates executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. § 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), by using the warrant to require Snap, Inc. to disclose the information described in Attachment B (part I), for the account(s) described in Attachment A, which will be searched for evidence of the crimes described herein and as described in Attachment B (part II).

11

## CONCLUSION

34. I submit that this affidavit supports probable cause to believe that the federal criminal

    statutes cited herein have been violated, and that the contraband, property, evidence,

    fruits, and instrumentalities of these offenses, more fully described in Attachment B, are

    located in or at the location described in Attachment A.  I respectfully request that this

    Court issue a search warrant for the location described in Attachment A, authorizing the

    search of the items described in Attachment B.


Respectfully submitted,

Travis Putrah, Special Agent
Homeland Security Investigation


Sworn to and subscribed before me on this _____ day of October 2022.

The Honorable Gwynne E. Birzer
United States Magistrate Judge

## **ATTACHMENT A**

This warrant applies to information associated with the following Snapchat Accounts, identified as:

**jimboliveson72**

that is stored at premises owned, maintained, controlled, or operated by Snap, Inc., a company headquarted in Santa Monica, California.

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED

I.      **Information to be disclosed by Snap Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap Inc. ("Snapchat"), including any messages, records, files, logs, or information that have been deleted but are still available to Snap Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Snap Inc., is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Snapchat passwords, Snapchat security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts, Snaps, Stories, Memories, Chat and other Snapchat activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; memories, Snap Map, Snapstreaks, stories, status updates; links to videos, photographs, articles, and other items; notes; postings; friend lists, including the friends' Snapchat user identification numbers; groups and networks of which the user is a member; future and past event postings; rejected "Friend" requests; blocked "Friend"; comments; and information about the user's access and use of Snapchat applications;

14

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All IP logs, including all records of the IP addresses that logged into the account;

(g) All geographic location data (i.e. GPS coordinates) associated with the account;

(h) All identifying information of devices used to access Snapchat account;

(i) All information about the Snapchat pages that the account was a follower of;

(j) All past and present lists of friends created by the account;

(k) All records of Snapchat searches performed by the account;

(l) The types of service utilized by the user;

(m) The length of service (including start date);

(n) All privacy settings and other account settings, including privacy settings for individual Snapchat posts and activities, and all records showing which Snapchat users have been blocked by the account;

(o) All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with supports services and records of actions taken.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of the criminal violations of 18 U.S.C. §§ 2251, 2252A(a)(2) and 2252A(a)(5)(B), as described in the Affidavit, including information pertaining to the following matters:

(a) The identity of the person(s) who created or used the Snapchat account, including records that help reveal the whereabouts of such person(s);

(b) Evidence indicating how and when the Snapchat account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Snapchat account owner;

(c) Evidence indicating the Snapchat account owner's state of mind as it relates to the crimes under investigation;

(d) Evidence of visual depictions of minors engaged in sexually explicit conduct, child pornography, child erotica, and communications pertaining to child pornography, child sexual abuse, and child sexual exploitation;

(e) Evidence pertaining to operation of, or communication with, the Kik, Snapchat, and Gmail accounts described in the attached affidavit (and in the affidavits incorporated by reference therein)

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the HSI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.